**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:21-CV-00074 -JHM**

**TYRECUS J. CROWE**                                                                                **PLAINTIFF**

**V.**

**GRAYSON COUNTY DETENTION CENTER, et al.**                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross motions for summary judgment: Plaintiff's motion [DN 20] and Defendant Rita Wilson's motion [DN 29]. Fully briefed, this matter is ripe for decision. For the following reasons, Plaintiff's motion is **DENIED** and Defendant Wilson's motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff Tyrecus Crowe ("Crowe") is a federal pretrial detainee at Grayson County Detention Center ("GCDC"). Mr. Crowe filed this civil rights action against numerous defendants, all of which were dismissed by this Court except Defendant Rita Wilson ("Wilson") in a previous Memorandum Opinion and Order on August 8, 2021. [DN 7]. The Court dismissed Plaintiff's claims against Defendant Wilson in her official capacity but allowed Mr. Crowe to file an Amended Complaint against Wilson in her individual capacity pursuant to 42 U.S.C. § 1983, which he did. [DN 8]. Plaintiff's Amended Complaint asserts a Fourteenth Amendment deliberate indifference to serious medical needs claim against Wilson, alleging that she failed to schedule a follow-up appointment with a pulmonologist who had seen Mr. Crowe for complications from a lung infection and pneumonia.

1

Defendant Rita Wilson is a nurse employed as the medical supervisor at GCDC.  Mr. Crowe first complained of shortness of breath in February 2021.  [DN 29-1 at 12].  GCDC sent him to the emergency room, where he was diagnosed with pneumonia.  Upon returning, GCDC and Defendant Wilson ensured that Mr. Crowe was taking his prescribed medications.  When Crowe reported back to medical with further complaints of chest pain and difficulty breathing, GCDC immediately sent him back to the hospital for further evaluation.  *Id.*  Crowe returned with no new diagnosis or orders from his treating physician.  *Id.*  GCDC ordered him daily dosages of Tylenol and Prednisone when he subsequently complained of chest pain.  *Id.*

When Crowe returned from his second hospital evaluation, GCDC placed him in medical observation and checked on him every fifteen minutes around the clock, every day.  *Id.* at 15.  While there, he was encouraged to walk twice daily and began spending time in the recreation yard.  *Id.* at 12.  In early March, Mr. Crowe began complaining of pain around his lungs.  *Id.*  His oxygen saturation levels were good, but he was placed back on medical observation.  *Id.*  Shortly thereafter, Crowe presented to medical with complaints of pain and hot/cold sweats.  Unsatisfied with the treatment he had received at the previous hospital (Twin Lakes), GCDC sent Mr. Crowe to Baptist Health Hardin for a new evaluation and ordered labs to be drawn.  *Id.* at 13, 15.  At Baptist Health, Crowe was treated for pneumonia and an infection around his lung.  Defendant Wilson routinely called to check on Crowe's status.  *Id.* at 13.

Upon return to GCDC, Nurse Wilson documented Crowe's active medications and the orders from his treating physician, Dr. Pendleton.  When Crowe later presented to medical, again with chest pain, Wilson immediately contacted Dr. Pendleton and got Crowe in to see him, and then ensured Crowe made it to a follow up appointment.  *Id.* at 15.  Crowe's blood oxygen saturation levels remained good and Dr. Pendleton gave no new orders or diagnosis.  *Id.* at 13, 15.

When Crowe complained about coughing up blood on April 14, 2021, Wilson again contacted Dr. Pendleton, who advised that Crowe needed to be seen by pulmonary. *Id.* at 13. Pursuant to Dr. Pendleton's instruction, Nurse Wilson arranged for Crowe to be evaluated by pulmonary at Baptist Health Elizabethtown on the same day of his complaint, April 14. *Id.* at 13. Crowe returned to GCDC the same day with no new orders or diagnosis.

Mr. Crowe had an appointment with Dr. Taylor, a pulmonologist at Owensboro Health Medical Group, on May 17, 2021. [Crowe Progress Notes, DN 29-7]. He was transported to and from that appointment with an order for 500 mg of Ceftin. *Id.* On or around June 22, in preparation for an upcoming bond hearing in Mr. Crowe's criminal case, Nurse Wilson contacted Dr. Taylor's office to obtain copies of Crowe's records that GCDC had not yet received. [DN 29-1 at 14]. After reviewing those records, Wilson noticed Dr. Taylor's note that Crowe should follow up within a week after his May 17 appointment. [DN 29-9]. This was the first time Wilson had seen this note, and she contacted Dr. Taylor's office to ask why the appointment was never scheduled. [Wilson Affidavit, DN 29-6]. According to Nurse Wilson's affidavit, the office clerk apologized and stated that it was her fault, and that she had forgotten to schedule Crowe's follow up appointment. *Id.* at 3–4. GCDC's medical department does not typically make those appointments for inmates. [*Id.*; *see* Woosley Affidavit, DN 29-2 at 4]. It is standard for the treating physician's office to schedule the appointment and then notify GCDC's medical department of the date and time once it is set. [DN 29-6 at 3–4; DN 29-2 at 4]. Dr. Taylor's office did not do that here. Once Wilson noticed the mistake, Mr. Crowe's follow up was scheduled for July 1, 2021. [DN 29-9]. Dr. Taylor performed new x-rays and did not place any new orders, prescribe any new medications, or issue a new diagnosis, determining there was "no further treatment necessary[.]." [DN 29-1 at

3

15]. Likewise, Dr. Pendleton evaluated Crowe again and remarked that he was "doing quite well" and "requires no further surgical intervention." *Id.*

Previously, Crowe submitted two separate grievances related to this delayed follow up appointment at GCDC, one on July 13 and the second on July 16. Both grievances received responses from the GCDC supervisor, and Crowe declined to appeal either response. [Woosley Affidavit, DN 29-2 at 3]. Responding to Crowe's July 13 grievance discussing the failure to schedule a follow up, the GCDC official wrote: "The Dr. office did not call and make the appt. As soon as it was found the appt. was made." [DN 32-1 at 6]. In his reply brief, Crowe alleged that Dr. Taylor testified at his criminal bond hearing that the reason the follow-up appointment was not scheduled on time was because GCDC advised him it was "not practical" for Crowe to return to his office in a week. [DN 35 at 2]. But Crowe has provided no record or evidence of this.

Crowe now moves for summary judgment on his suit against Wilson in her individual capacity under § 1983 based on her alleged failure to schedule the follow up appointment with Dr. Taylor, claiming this conduct exhibited a deliberate indifference to Crowe's serious medical needs. Wilson also moves for summary judgment.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. Discussion

A prisoner bringing a claim of deliberate indifference to serious medical needs must satisfy two requirements to succeed. First is the objective requirement, in which he must show that his allegedly deprived medical needs were "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement, the subjective one, requires Plaintiff to show that Defendant Wilson acted with a "sufficiently culpable state of mind." *Id*. Mere negligence, or a medical provider's errors in medical judgment, is not enough to constitute deliberate indifference under the Fourteenth Amendment. *See Rhinehart v. Scutt*, 894 F.3d 721, 736–38 (6th Cir. 2018). Rather, this subjective requirement "follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. The state of mind required for deliberate indifference is "equivalent to criminal recklessness" and exempts good faith attempts to provide reasonable medical care. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). Under the subjective standard, a prison official cannot be liable unless he or she "knows of and [consciously] disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

5

Mr. Crowe certainly had a serious condition with his pneumonia, chest pain, and lung infection. But Crowe cannot show that Defendant Wilson's actions came close to deliberate indifference to his medical needs or rose to the level of wanton neglect or criminal recklessness. To the contrary, the record (including Crowe's Progress Notes) shows that Wilson and the GCDC medical staff were diligent in taking good care of Mr. Crowe when he experienced health issues. They promptly took him to the hospital multiple times when he complained of chest pain and shortness of breath, leading to his pneumonia diagnosis. Wilson and the GCDC staff ensured that Plaintiff was taking his medications and checked on him every fifteen minutes a day in medical supervision following his second visit to the hospital. Nurse Wilson contacted Dr. Pendleton on multiple occasions when Plaintiff made further complaints and arranged for Plaintiff to be seen by a pulmonologist the same day he complained of coughing up blood.

The mix-up with scheduling the follow up appointment with Dr. Taylor is fairly attributable to the office clerk's scheduling error. Based on the sworn affidavits of Jailer Jason Woosley and Wilson, it was not customary for GCDC to schedule these appointments on their own—the doctor's office would typically call and set the date and time. Both affidavits state that this was an error of the clerk and not of the jail. Further, Wilson contacted Dr. Taylor's office right when she learned of the missed follow up appointment and ensured Crowe was still seen. Although Crowe was seen a little over a month after Dr. Taylor's recommended appointment, his condition remained unchanged and Dr. Taylor gave no new treatments or diagnosis. Dr. Pendleton followed suit, remarking that Crowe was doing well.

Even if the failure to schedule the follow up appointment was Wilson's fault, this would not rise to the level of deliberate indifference required to show a violation of the Fourteenth Amendment. At best, it would be a mistake. There is simply no evidence provided by Plaintiff

showing that the scheduling error was Wilson's fault, much less that she deliberately declined to schedule it while knowing Dr. Taylor had recommended it. Wilson's prompt action after discovering the error in the medical records shows that she acted in good faith to correct the mistake and ensure Crowe was still seen, which he was.

Lastly, even if Crowe had provided evidence of deliberate indifference, this Court could not entertain his claims because he failed to exhaust his administrative remedies before bringing this action. The Prison Litigation Reform Act (PLRA) provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is the policy of GCDC that inmates must appeal their grievances within five days of receiving a response if the inmate so wishes to challenge the jail's disposition of his complaint. [GCDC Grievance Policy and Procedure, DN 29-4 at 2 ("[I]f not satisfied with the disposition of the grievance by the Shift Supervisor, the inmate may appeal in writing within five (5) days of the initial response.")]. In this case, Crowe submitted two grievances—one on July 13 and another on July 16—to which GCDC responded on July 15 and July 20, respectively. [DN 29-2 at 2; DN 29-5]. Crowe did not appeal either response. [DN 29-2 at 3]. As such, he failed to exhaust his administrative remedies available to him at the jail pursuant to the PLRA.

Being no genuine issue of material fact as to Nurse Wilson's conduct or Plaintiff's failure to exhaust, the Court awards summary judgment to Defendant.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment [DN 20] is **DENIED** and Defendant Wilson's motion for summary judgment [DN 29] is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

May 3, 2022

cc:    Counsel of Record